UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID R. FUGATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-01147-SRC |
| | ) | |
| BONNIE HUFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

Self-represented Plaintiff David R. Fugate brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights.  The matter is before the Court on Fugate's motion for leave to proceed in forma pauperis.  Doc. 5.  Having reviewed the motion and the financial information submitted in support, the Court grants the motion and assesses an initial partial filing fee of $10.37.  *See* 28 U.S.C. § 1915(b)(1).  Additionally, after reviewing the pleadings under 28 U.S.C. § 1915(e)(2), the Court dismisses without prejudice Fugate's amended complaint, Doc. 4, and denies as moot his motion for appointment of counsel, Doc. 9.

## I.      Initial partial filing fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect, an initial partial filing fee of 20 percent of the greater of:  (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  *See* 28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner forwards these

monthly payments to the Clerk of Court for this district each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Fugate is a convicted-and-sentenced state prisoner. Doc. 4 at p. 2. In support of his motion to proceed without prepaying fees and costs, he submitted an inmate account statement showing average monthly deposits of $51.83. Doc. 6. The Court finds that Fugate has insufficient funds in his prison account to pay the entire fee and therefore assesses an initial filing fee of $10.37, which is twenty percent of his average monthly deposits.

## II.     Legal standard on initial review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, courts should construe a plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must

demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## III.    The amended complaint

Fugate, an inmate at Potosi Correctional Center ("PCC"), brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against five Defendants:  Bonnie Huff (PCC Nurse Practitioner), Tamra Crouch (PCC Nurse Practitioner), Timber Taylor (PCC Head of Nursing), Dr. Chada (PCC Doctor); and Dr. McKinney (PCC Doctor).  Doc. 4 at pp. 2–3, 11. Fugate brings claims against Taylor in both her individual and official capacities, but he names the other four defendants in their individual capacities only.  *Id.*

Fugate claims that he developed back problems in January 1998 after he slipped and fell at his home.  *Id.* at pp. 3, 12.  A year later, the Social Security Administration found him disabled due to a cervical spine injury.  He subsequently had spinal fusion surgery.  More than a decade after that, in April 2010, he suffered further injury to his back when he was attacked by a group of people.[1]  *Id.* at pp. 3–4, 12–13.

Fugate has been in Missouri Department of Corrections ("MDOC") custody since 2010, receiving healthcare from Corizon Health Care employees, including the named defendants.  He

---

[1] Fugate states that he was attacked by a "street gang of six people" and then by Michael Crutchfield.  Independent review of Fugate's criminal history on Missouri Case.net, the State of Missouri's online docketing system, shows that a jury convicted Fugate of murdering Michael Crutchfield.  *State v. Fugate*, No. 10JE-CR01315-01 (23rd Jud. Cir. Sept. 17, 2010).

alleges that during his entire period of incarceration, he has been refused medical care for "brain damage, head concussion, cervical spine and lumbar spine injuries." *Id.* at p. 13.

In September 2021, while in MDOC custody, Fugate asserts that he was attacked by multiple non-defendant correctional officers at PCC.  At the time, Fugate was using a wheelchair, but he states that the correctional officers informed him that his medical lay-in[2] had expired and they required him to walk.  Fugate alleges that one of the officers threatened him with violence if he fell, and that Fugate did fall when he tried to walk without use of the wheelchair.  He states that a correctional officer then maced him in the face.  According to Fugate, this fall further damaged his lumbar spine and has led to continuing deterioration of his spinal problems.  Since the incident, he claims he has experienced pain, numbness, tingling, and increased vibrations in his back, legs, knees, and feet.  *Id.* at p. 14.

Fugate divides his complaint into six claims.  In his first claim, he asserts that he has been told that he needs an MRI of his lumbar spine, but he has not received one.  *Id.* at p. 15.  He asserts that Dr. Chada was going to request an MRI following a neurological exam Dr. Chada performed in 2014, but Fugate never had an MRI.  He claims that Dr. McKinney and Nurse Practitioner Crouch refused to discuss Fugate's spine injuries or an MRI.  After an April or May 2020 neurological exam with Nurse Practitioner Huff, Fugate was told that an X-ray was "worthless," and he needed an MRI of his lumbar spine.  Huff told him she would talk to a Corizon Health official to schedule the MRI.  Fugate states that he still has not had an MRI as of October 2021.

In his second claim, Fugate seeks an appointment to see a Neurologist or Central Nervous System specialist for surgery evaluation.  *Id.* at p. 16.  According to Fugate, defendants Dr.

---

[2] Fugate does not define "medical lay-in," but the Court takes judicial notice that a "medical lay-in" is a physician-issued document restricting an offender's placement and activities because of the offender's medical condition.  *See, e.g.*, *Dykes v. Murphy*, No. 4:09-cv-1062, 2010 WL 2287496, at *1 (E.D. Mo. June 3, 2010).

Chada, Dr. McKinney, Huff, and Crouch are not neurologists and have failed to give him an appointment to see an expert.

In his third claim, Fugate seeks adequate pain medication.  He alleges that defendants Dr. Chada, Dr. McKinney, Huff, and Crouch have failed to provide "meaningful" pain medication. *Id.* at pp. 16, 22.

Fugate's fourth claim is brought against Crouch, requesting that the Court "restore and renew" his medical lay-ins "as they were before."  Doc. 4 at pp. 16, 23.  He asserts that Crouch has refused him care including:  health services requests, sick call visits, doctor visits, chronic care appointments, medical lay-ins, a TB test, a "PSA Bleed" test, and a rectal exam for cancer screening.  In addition, Crouch will not discuss or let Fugate talk about his spinal and back injuries with her.  *Id.*  Fugate states that he has requested and been denied medical lay-ins five times, including "wheelchair, wheelchair pusher, handicap cell, handicap shower, front cuff, handicap shower chair, lower level bunk, lower level cell, bottom bunk, neck brace, [and] CPAP machine."  *Id.*

Fugate seeks different prison quarters in his fifth claim.  *Id.* at pp. 17, 24.  He wants to be moved to the Transitional Care Unit (TCU).  He alleges that Crouch has refused to move him to TCU even though he claims he is "medically unfit" for general population due to his spinal injuries.  Fugate states that he has not showered in the last six months, and he cannot obtain food in general population.

Finally, Fugate's sixth claim is brought against the PCC head of nursing, Timber Taylor. According to Fugate, Taylor is in charge of all Corizon medication techs at PCC and she controls the distribution of medications. Id. at pp. 17, 25.  He alleges that from July 2020 to July 2021, Taylor failed to provide him with his daily medications prescribed to him by a doctor for

depression and anxiety.  He states that the reason he was denied his medications by Taylor is because he is disabled.  *Id.*

  For relief, Fugate seeks damages.  *Id.* at pp. 20–25.  He states that he cannot stand or walk without assistance, and when he is assisted, it is extremely painful and feels like his spine and legs are broken.  *Id.* at p. 18.  He is also experiencing numbness, tingling, vibrations, pain, throbbing, muscle weakness, spasms, and stiffness in his legs, knees, feet, and back.  He states that his legs must be kept bent at the knees at all times or they become "100%" paralyzed.  He also has pain while sitting and sleeping.  He alleges that he has missed an estimated 1,000 meals over the past ten years due to his chronic pain.  *Id.*  Fugate also claims he has headaches; neck and shoulder issues; numbness and tingling in arms and hands; body-wide weakness and pain; and depression and anxiety.  *Id.* at p. 19.

  Fugate alleges that he has been filing grievances concerning inadequate medical care for the "past 11 years" but "Corizon has been always refusing medical help."  *Id.* at pp. 6–7.  He attached approximately thirty pages of grievance documents and filings to his amended complaint.  Doc. 4-1.[3]  Between August and December 2020, Fugate filed multiple grievances complaining that Corizon medical techs had been refusing to give him his prescribed mental health medications because he could not stand or walk to his cell door to receive them.  *Id.* at pp. 18–19, 22, 24, 26–28.  He stated that his back injuries prevented him from standing and walking to the door, and that even when he crawled to the door, medical techs were refusing to give him his prescribed medications.  He alleges that this was at the direction and order of "Ms. Timber." *Id.* at pp. 18, 26.  Around October or November 2020, Fugate requested an MRI of his lumbar spine.  *Id.* at p. 8.  In December 2020, he asked to be moved out of general population and into

---

[3] The Court treats these attachments as part of the pleadings.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

the TCU due to his medical limitations.  *Id.* at p. 16.  In May 2021, he requested to see a

neurologist for surgery evaluation.  *Id.* at pp. 10–11.  Around the same time, he filed a grievance

complaining of deliberate indifference to his medical needs by Corizon.  *Id.* at p. 14.  These

grievances appear to have been answered in June 2021, over six months after the first was filed.

They all received the same response:  Fugate was seen by a Nurse Practitioner on June 8, 2021,

and an order was placed for Fugate to have an X-ray performed on his back.  *Id.* at pp. 9, 13, 15,

17.

In various grievance responses, medical staff encouraged Fugate to "fill out an HSR" for

his back pain or "anytime services are needed," and noted that Fugate was "enrolled in the

Chronic Pain Chronic Care Clinic" and needed to attend his scheduled appointments for

evaluation and treatment to take place.  *Id.* at pp. 13, 15, 17, 21, 25.  One appeal response

indicates that Fugate is "seen at least every six months for [his] healthcare concerns."  *Id.* at p.

21.  For example, in response to one of his grievances from August 2020, staff noted that he was

scheduled for a physical on September 10, 2020.  *Id.* at p. 20.  In another letter from a prison

official dated October 6, 2021, addressing one of Fugate's requests to see a neurologist for

surgery evaluation, stated that Fugate's "concerns are not new and have been addressed on

multiple occasions."  *Id.* at p. 7 (citing IRR responses PCC-20-1133, PCC-20-1073, PCC-20-

1011, PCC-21-578, and PCC-21-571).

One informal resolution request response stated:

> You saw the provider on July 28, 2020 and did not mention a change in your
> ambulatory status.  On August 19, you were scheduled to be seen in nurse sick call,
> but refused to come out of your cell, stating you could not walk.  Reports from
> housing unit staff contradict your claim of not being able to walk.  Nursing staff
> brings medication to your door.  You are required to come to the door for the
> medication, just as you do for your meals, mail, etc. in segregation.

> In conclusion, you are responsible for being at the cell door to receive your
> medication.  You are scheduled for a physical with the provider on September 10,

2020 at 12pm.  Please keep this appointment to be evaluated and treated appropriately.

*Id.* at p. 20.  In addition, one grievance appeal response stated in part:

Medicals [sic] policy is to stand for your medications at pass.  You state that you are crawling to the door for your medication and have since been told that you will not receive your medication unless you walk to the door.  You are encouraged to fill out an HSR [Health Services Request] to be seen for your back pain.  You are enrolled in the Chronic Pain Chronic Care Clinic and are seen at least every six months for your healthcare concerns.  You are assessed, evaluated and medication is reviewed.  Please attend all scheduled appointments as not to delay your healthcare, and as your need for additional evaluation and treatment will be determined at that time.

*Id.* at p. 21; *see also id.* at p. 25 ("You are being closely monitored for your healthcare concerns. You are enrolled in the Chronic Pain Chronic Care Clinic.  Your medications have recently been reviewed and are renewed, changed and/or adjusted when medically indicated by the provider. You are receiving therapy sessions on a regular basis.  Please submit an HSR anytime services are needed, . . . .").

## IV.    Discussion

After careful review and liberal construction of the pleadings, the Court finds that Fugate's amended complaint fails to state plausible Eighth-Amendment deliberate-indifference claims.

### A.    Official-capacity claim against Taylor

The only defendant that Fugate brings an official capacity claim against is PCC head of nursing, Timber Taylor.  Doc. 4 at p. 11.  In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  Here, Defendant Taylor is an employee of the MDOC. Naming a state official in his or her official capacity is the equivalent of naming the government

entity that employs the official—the State itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights."  *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will*, 491 U.S. at 71.

In addition, in the absence of a waiver, the Eleventh Amendment to the Constitution of the United States—which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . ."—bars a § 1983 suit against a state official acting in his or her official capacity.  *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).  Accordingly, since Fugate seeks monetary damages against defendant Taylor, the Eleventh Amendment bars his official-capacity claim, and the Court dismisses it.  *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment.").

**B.      Individual-capacity Eighth-Amendment deliberate-indifference claims**

Fugate brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978).  One such federally protected right is the Eighth Amendment's prohibition of cruel and unusual punishment, which protects prisoners from deliberate indifference to their serious medical needs.  *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).  To survive initial review, a plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  *Estelle*, 429 U.S. at 106.  Nor

will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Instead, a prisoner must allege that he suffered objectively serious medical needs and that defendants actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011). A prisoner may show deliberate indifference through an intentional delay in or denial of access to medical care. *Estelle,* 429 U.S. at 104–05.

According to the allegations of the amended complaint, in 1999 the Social Security Administration found Fugate disabled due to a back injury. Doc. 4 at p. 3. He suffered further damage to his back in 2010 and again in 2021. *Id.* at pp. 4, 13. He has been incarcerated with the MDOC, under the care of Corizon Health Care employees (including defendants), since 2010. Fugate claims that he has been denied adequate medical care for his injuries during his entire period of incarceration. *Id.* at pp. 15–17. He requests an MRI of his spine, an appointment to see a neurologist, adequate pain medications, transfer to a housing unit where the facilities accommodate his injuries, and access to his prescribed mental health medications even when his injuries prevent him from being able to stand during med pass. *Id.* at p. 20–25.

As an initial matter, the Court finds that Fugate has alleged sufficient facts to establish that his back injuries constitute a serious medical need. All five defendants are nurses or doctors employed to provide medical services to PCC inmates like Fugate. Fugate plausibly alleges facts sufficient to show that all named defendants actually knew about his medical needs because Fugate states that he discussed (or attempted to discuss) his medical problems with all of them.

Further, his alleged inability to walk and stand, in addition to his extensive complaints of pain, made the risk obvious. *Dadd v. Anoka Cty.*, 827 F.3d 749, 755 (8th Cir. 2016) (stating that the Court "may infer that an official knows of a substantial risk to a plaintiff's health when the risk is obvious" (citing *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997))). Thus, Fugate must show deliberate indifference on the part of the defendants. *See Estelle*, 429 U.S. at 106. And to state a cognizable claim under § 1983, he must allege that the defendants were personally involved in or directly responsible for the incidents that deprived him of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

### 1.     Claims 1, 2, and 3

In Claim 1, Fugate claims that he needed, and did not receive, an MRI—and that Dr. Chada, Dr. McKinney, Bonnie Huff, and Tamra Crouch failed to request or schedule one. Doc. 4 at pp. 15, 20. According to Fugate, after a 2014 neurological exam, Dr. Chada was going to recommend him for an MRI; however, he never received one. Doc. 4 at pp. 15, 20. Fugate does not state what follow-up he had with Dr. Chada in the seven years between that neuro-exam and the filing of his complaint. Fugate does not state why he never received an MRI or that Dr. Chada was the one who denied him an MRI. The factual allegations do not establish that Dr. Chada deliberately disregarded Fugate's medical need—in fact, Fugate alleges that Dr. Chada recommended an MRI.

In addition, Fugate's allegations against Dr. Chada about this MRI date back to 2014, which is outside the statute of limitations for bringing an § 1983 claim. "Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915[] when it is apparent the statute of limitations has run."

*Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).  Section 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations.  *Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 766–67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4).  In this case, Fugate's allegations against defendant Dr. Chada regarding a denied 2014 MRI are time-barred.

Fugate also claims that "Dr. McKinney never request [sic] MRI of lumbar spine," and that Huff was going to talk to the director of nursing to schedule a MRI, but he never received one.  Doc. 4 at p. 15.  He also states that Crouch "refused to talk about MRI [sic]" and never requested one.  *Id.*  As with Dr. Chada, Fugate does not state why he never received an MRI, or that Dr. McKinney, Crouch, or Huff were the ones who denied him an MRI.

Similarly, in Claim 2 Fugate states that Dr. Chada, Dr. McKinney, Huff, and Crouch are not neurologists, and failed to give him an appointment to see one.  Doc. 4 at pp. 16, 21.  Fugate does note that Dr. Chada and Huff performed neurological examinations on him, but states that "[a] neurologist is an expert in the central nervous system . . . [and] can read MRI [sic] and do a neuro-examination evaluation for lumbar spine surgery."  *Id.* at pp. 16, 21.

In Claim 3, Fugate states that Dr. Chada—along with Dr. McKinney, Huff, and Crouch—failed to give him "meaningful" pain medication, implying that each of these defendants provided him some pain medication, just not "meaningful" medication.  Doc. 4 at pp. 16, 22.  In this claim, which Fugate calls "Claim #3 . . . meaningful pain medication," he states three times that these four defendants failed to provide "meaningful pain medication," but also adds that Dr. McKinney, Huff, and Crouch "refused to give me any pain medications at all, zero."  *Id.* at p. 16, 22.  Further, a grievance appeal response Fugate attached to his complaint indicates that he is enrolled in the "Chronic Pain Chronic Care Clinic," and that his medications "have recently been

reviewed and are renewed, changed and/or adjusted when medically indicated by the provider." Doc. 4-1 at p. 25.

The allegations in Claims 1, 2, and 3 fail to state a claim of deliberate disregard because a prisoner has no right to a specific course of medical treatment or to prescription pain medication. *See Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."); *Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (stating that a "mere disagreement with treatment decisions . . . does not rise to the level of a constitutional violation"); *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (holding that a prisoner's disagreement with medical staff's decision to offer him over-the-counter medications, rather than prescription medication, did not constitute deliberate indifference).

Further, "a healthcare provider need not accept as true medical judgments offered by their patients but must make treatment decisions on the basis of many factors, only one of which is patient's input." *Allard v. Baldwin*, 779 F.3d 768, 772–73 (8th Cir. 2015) (citing *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990); *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (holding that mere disagreement with treatment decisions does not rise to level of a constitutional violation)); *see also Estelle*, 429 U.S. at 107 (stating that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."). For these reasons, the Court dismisses Claims 1, 2, and 3.

## 2.    Claims 4 and 5

In Claim 4, Fugate asks the Court to "restore and renew my medical lay-ins as they were before." Doc. 4 at p. 23. He asserts that Tamra Crouch "failed and refused to give" him medical care including: "Health Services Request," sick call visits, doctor visits, chronic care appointments, medical lay-ins, a TB test, a "PSA Bleed" test, and a rectal exam for cancer screening. Doc. 4 at pp. 16, 23. Fugate also claims Crouch will not discuss Fugate's spinal and back injuries. *Id.* Fugate states that officials denied his requests for medical lay-ins—including "wheelchair, wheelchair pusher, handicap cell, handicap shower, front cuff, handicap shower chair, lower level bunk, lower level cell, bottom bunk, neck brace, [and] CPAP machine"—five different times. *Id.* at p. 23.

In Claim 5, also directed at Crouch, Fugate seeks different prison quarters. *Id.* at p. 17. He wants to be moved to the Transitional Care Unit and alleges that Nurse Practitioner Crouch has refused to move him there even though he claims he is "medically unfit" for general population. In his informal-resolution request, which he associates with this claim, Fugate requested: "move me to TCU so that I may obtain my property, TV, tablet, canteen, phone calls, etc." Doc. 4-1 at p. 16. Fugate alleges that he has not showered in the last six months, and he cannot obtain food in the general population. However, he also states that he has been in "AD SEG for 5 months." Doc. 4-1 at p. 16.

Fugate's allegations in claims 4 and 5 do not establish deliberate indifference. One of the documents Fugate attached to his complaint reveals that his concerns about his back were "not new" and that medical staff had addressed Fugate's concerns and requests "on multiple occasions." Doc. 4-1 at p. 7. In their responses to his grievances, medical staff repeatedly encouraged Fugate to "fill out an HSR" for his back pain or "anytime services are needed," and noted that Fugate was "enrolled in the Chronic Pain Chronic Care Clinic" and needed to attend his scheduled appointments for evaluation and treatment to take place. Doc. 4-1 at pp. 13, 15,

17, 21, 25.  One appeal response indicates that Fugate is "seen at least every six months for [his] healthcare concerns."  Doc. 4-1 at p. 21.  For example, in response to one of his grievances from August 2020, staff noted that he was scheduled for a physical on September 10, 2020.  Doc. 4-1 at p. 20.

At most, in these claims Fugate alleges a disagreement with prison officials about his housing and accommodations—aspects of his care.  *See Long*, 86 F.3d at 765 (holding that prison officials do not violate the Eighth Amendment when, in exercising professional judgment, they refuse to implement inmate's requested course of treatment).  And, as noted, his concerns about his back were "not new" and were "addressed on multiple occasions."  Doc. 4-1 at p. 7. Thus, this case is not like *Hartsfield v. Colburn*, where the Eighth Circuit noted that an inference of deliberate indifference is strengthened when "an inmate communicates his distress directly . . . and prison officials fail to respond."  491 F.3d 394, 401 (8th Cir. 2007).

Based on the grievance documents Fugate attached to his complaint, the Court notes that Fugate communicated directly with prison officials about his concerns on numerous occasions, and those officials responded numerous times, just not in the way Fugate wanted.  *See Estelle*, 429 U.S. at 107; *Allard*, 779 F.3d at 772–73; *Phillips*, 437 F.3d at 795; *Long*, 86 F.3d at 765; *Givens*, 900 F.2d at 1232.  In short, prison officials' repeated responses to Fugate's repeated grievances cause his deliberate-indifference claims about housing and treatment to fail.

### 3.    Claim 6

In Claim 6, Fugate alleges that from July 2020 to July 2021, Timber Taylor (whom Fugate claims is in charge of all medication techs at PCC and controls the distribution of medications) failed to provide him with his daily medications prescribed to him by a doctor for depression and anxiety.  He states that the reason he was denied his medications by Taylor is

15

because he is disabled.  *Id.*  Fugate alleges that Taylor instructed staff who distribute medications

to not give him his medications unless he is standing at his cell door.  Doc. 4-1 at p. 26.

Fugate also attached grievance documents regarding this claim.  Doc. 4-1 at pp. 18–21.

His informal-resolution request is dated August 20, 2020, the request was received on August 26,

2020, and the response is dated September 5, 2020.  *Id.*  After reviewing and investigating

Fugate's informal-resolution request, the reviewing nurse, Kimberly Randolph, determined that:

> You saw the provider on July 28, 2020 and did not mention a change in your
> ambulatory status.  On August 19, you were scheduled to be seen in nurse sick call,
> but refused to come out of your cell, stating you could not walk.  Reports from
> housing unit staff contradict your claim of not being able to walk.  Nursing staff
> brings medication to your door.  You are required to come to the door for the
> medication, just as you do for your meals, mail, etc. in segregation.  In conclusion,
> you are responsible for being at the cell door to receive your medication.

*Id.* at p. 20.  Fugate filed a grievance appeal on December 28, 2020, the appeal was received on

January 4, 2021, and the appeal response is dated January 11, 2021.  Id. at p. 21.  The response,

reviewed by the regional medical director, stated in part:

> Medicals [sic] policy is to stand for your medications at pass.  You state that you
> are crawling to the door for your medication and have since been told that you will
> not receive your medication unless you walk to the door.  You are encouraged to
> fill out an HSR to be seen for your back pain.  You are enrolled in the Chronic Pain
> Chronic Care Clinic and are seen at least every six months for your healthcare
> concerns.  You are assessed, evaluated and medication is reviewed.  Please attend
> all scheduled appointments as not to delay your healthcare, and as your need for
> additional evaluation and treatment will be determined at that time.

*Id.* at p. 21; *see also id.* at p. 25.

 The allegations in Claim 6 against Taylor are not sufficient to state a claim of intentional

disregard for a serious medical need.  As stated above, one type of "serious medical need" is

"one that has been diagnosed by a physician requiring treatment,"  *Holden*, 663 F.3d at 342, and

Fugate's doctor-prescribed medication for depression and anxiety undoubtedly qualifies as a

"serious medical need."  However, grievance documents Fugate attached to his complaint

establish that as early as August 2020, prison staff investigated and reviewed his concerns

regarding not receiving his depression and anxiety medication.  Doc. 4-1 at p. 20.  In light of the findings of the other medical staff during the grievance process, Doc. 4-1 at pp. 20–21, Fugate cannot show that Nurse Taylor's actions in requiring him to follow routine procedure to obtain his medication were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014).  For this reason, the Court dismisses Claim 6.

## V.      Conclusion

The Court grants Fugate's [5] Motion for Leave to Proceed in forma pauperis.  *See* 28 U.S.C. § 1915(a)(1).  The Court orders Fugate to pay, no later than May 2, 2022, an initial partial filing fee of $10.37.  Fugate must make his remittance payable to "Clerk, United States District Court," and include on it:  (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.  *See* 28 U.S.C. § 1915(b)(1).

The Court concludes that Fugate fails to state any claims under the Eighth Amendment.  *See* 28 U.S.C. § 1915(e)(2).  Accordingly, the Court dismisses without prejudice Fugate's [4] amended complaint under 42 U.S.C. § 1983, denies as moot Fugate's [9] Motion for Appointment of Counsel, and certifies that an appeal of this Memorandum and Order would not be taken in good faith.  An Order of Dismissal accompanies this Memorandum and Order.

So Ordered this 31st day of March 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE